## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Ralph Lauren Corporation, | CASE NO.: |
| *Plaintiff*, | |
| v. | |
| Factory Mutual Insurance Company, | |
| *Defendant*. | |

## <u>COMPLAINT</u>

Plaintiff, Ralph Lauren Corporation ("Ralph Lauren Corp."), files this Complaint for damages and declaratory judgment against Defendant, Factory Mutual Insurance Company ("FMIC"), alleging the following:

## I.      INTRODUCTION

1.      This diversity action for breach of contract, declaratory judgment, and violation of the New Jersey Consumer Fraud Act arises from FMIC's improper investigation and refusal to pay Ralph Lauren Corp.'s claim for insurance coverage under an "all risks" insurance policy that FMIC sold to Ralph Lauren Corp.

2.      Despite agreeing to cover Ralph Lauren Corp. for all risks of physical loss or damage to property resulting from any cause not excluded, as well as the resulting time element and extra expense losses, FMIC has refused to honor its contractual obligations in the face of a claim for which coverage is expressly provided. Instead, FMIC attempts to wrongfully shoehorn Ralph Lauren Corp.'s claim into a narrow and limited grant of coverage, while contending – without textual support – that all other coverage is excluded.  Notwithstanding its conduct, FMIC must cover the loss sustained by Ralph Lauren Corp. that FMIC contractually agreed to insure.

## II.     PARTIES

3.     Ralph Lauren Corp. is incorporated under the laws of the State of Delaware with its principal place of business at 650 Madison Avenue, New York, NY 10022.  Ralph Lauren Corp. maintains corporate offices responsible for risk management and insurance in New Jersey.

4.     FMIC is incorporated under the laws of the State of Rhode Island with its principal place of business in Johnston, Rhode Island.

## III.     JURISDICTION AND VENUE

5.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000 exclusive of interest and costs.

6.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) as a substantial portion of the events or omissions giving rise to Ralph Lauren Corp.'s claim occurred in this district, including the negotiation and delivery of the relevant insurance policy, as well as the submission of the claim at issue.

## IV.     FACTUAL BACKGROUND

7.     Founded in 1967 by Mr. Ralph Lauren, Ralph Lauren Corp. is a global leader in the design, marketing, and distribution of premium lifestyle products, including apparel, footwear, accessories, home furnishings, fragrances and hospitality.

8.     Ralph Lauren Corp.'s premier reputation has been built on over fifty years of outfitting a diverse portion of the market with exceptional products.

9.     Ralph Lauren Corp. operates over 1,000 stores around the world.[1]

---

[1] See http://investor.ralphlauren.com/news-releases/news-release-details/ralph-lauren-reports-fourth-quarter-and-full-year-fiscal-2020 (last viewed August 6, 2020).

10.     Prior to being forced to close due to COVID-19, hundreds of thousands of people visited Ralph Lauren Corp. stores every day.

11.     FMIC sold an insurance policy to Ralph Lauren Corp.

12.     While soliciting Ralph Lauren Corp.'s business, FMIC touted its "Market Leading Claims Service" as a key reason why Ralph Lauren Corp. should procure coverage from FMIC, claiming to "[f]ocus on **finding coverage** instead of exclusions" and "[f]air and **prompt** payment of losses".  (Proposal dated May 1, 2019, attached as Exhibit B (bolded terms original).)

13.     On information and belief, FMIC represents that it evaluates all claims in good faith, in a manner consistent with the plain language of the policy and pursuant to the applicable law governing the interpretation of the relevant policy.

14.     The policy has an effective term of May 1, 2019 through May 1, 2020. (Policy No. 1051410, at RLCPolicy_0008, attached as Exhibit A (the "Policy").)

15.     FMIC also issued a policy to Ralph Lauren Corp. for the term May 1, 2020 through May 1, 2021, which is substantively similar in all material respects relating to coverage to the Policy.

16.     The Policy covers Ralph Lauren Corp.'s property against "ALL RISKS OF PHYSICAL LOSS OR DAMAGE, except as … excluded …." (Exhibit A, at RLCPolicy_0008.)

17.     The Policy also affords coverage to Ralph Lauren Corp. for Time Element loss "directly resulting from physical loss or damage of the type insured …." (Exhibit A, at RLCPolicy_0046.)

18.     The Policy provides up to $700 million in coverage per occurrence. (Exhibit A, at RLCPolicy_0011.)

19.     FMIC agreed to cover Ralph Lauren Corp.'s risk of loss, in consideration of a substantial premium that was paid by Ralph Lauren Corp. (Exhibit A, at RLCPolicy_0008.)

A.     **COVID-19 Is a Deadly Communicable Disease**

20.     COVID-19 is a deadly communicable disease that, as of August 6, 2020, has already infected over 4.8 million people in the United States and caused more than 157,000 deaths.[2]

21.     The Centers for Disease Control and Prevention ("CDC") estimates that infection rates for COVID-19 are likely at least ten times higher than reported.[3]

22.     There is still no effective vaccine for COVID-19.

23.     The World Health Organization ("WHO") has declared the COVID-19 outbreak a pandemic and President Trump has declared a nationwide emergency due to the public health emergency caused by the COVID-19 outbreak in the United States.

24.     A pandemic, by definition, is an "an epidemic occurring worldwide …."[4]

25.     The incubation period for COVID-19—the time between exposure (becoming infected) and symptom onset—can be up to 14 days.[5]

26.     During this period (also known as the "pre-symptomatic" period), infected persons can be contagious and disease transmission can occur before the infected person shows any symptoms or has any reason to believe they are infected.[6]

---

[2] See https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last viewed August 6, 2020).

[3] See https://www.nbcnews.com/health/health-news/cdc-says-covid-19-cases-u-s-may-be-10-n1232134 (last viewed August 6, 2020).

[4] See https://www.who.int/bulletin/volumes/89/7/11-088815/en/#:~:text=A%20pandemic%20is%20defined%20as,are%20not%20considered%20pandemics.

[5] See https://www.who.int/docs/default-source/coronaviruse/situation-reports/20200402-sitrep-73-covid-19.pdf?sfvrsn=5ae25bc7_2 (last viewed August 6, 2020).

[6] See https://www.who.int/docs/default-source/coronaviruse/situation-reports/20200402-sitrep-73-covid-19.pdf?sfvrsn=5ae25bc7_2 ("In a small number of case reports and studies, pre-symptomatic transmission has been documented through contact tracing efforts and enhanced investigation of clusters of confirmed cases. This is supported by data suggesting that some people can test positive for COVID-19

27.     Not only is COVID-19 spread by human-to-human transfer, but the WHO has confirmed that COVID-19 can exist on contaminated objects or surfaces.[7]

28.     According to a study documented in *The New England Journal of Medicine*, COVID-19 was detectable in aerosols for up to three hours, up to four hours on copper, up to 24 hours on cardboard, and up to three days on plastic and stainless steel.[8]

29.     Ralph Lauren Corp. uses all of these materials at its stores and in its ordinary course of business.

30.     Individuals also can become infected with COVID-19 through indirect contact with surfaces or objects used by an infected person, whether they were symptomatic or not.[9]

31.     COVID-19 also can spread through airborne transmission.[10]

32.     The CDC published a study in July that concluded "droplet transmission was prompted by air-conditioned ventilation" that caused an outbreak among people who dined in the same air-conditioned restaurant.[11]

---

from 1-3 days before they develop symptoms. Thus, it is possible that people infected with COVID-19 could transmit the virus before significant symptoms develop.") (last viewed August 6, 2020).

[7] See https://www.who.int/news-room/commentaries/detail/modes-of-transmission-of-virus-causing-covid-19-implications-for-ipc-precaution-recommendations ("[T]ransmission of the COVID-19 virus can occur by direct contact with infected people and indirect contact with surfaces in the immediate environment or with objects used on the infected person") (last viewed August 6, 2020).

[8] See https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces (last viewed August 4, 2020); see also https://www.who.int/news-room/commentaries/detail/modes-of-transmission-of-virus-causing-covid-19-implications-for-ipc-precaution-recommendations (last viewed August 6, 2020).

[9] Id.

[10] See https://academic.oup.com/cid/article-pdf/doi/10.1093/cid/ciaa939/33478095/ciaa939.pdf (last viewed July 14, 2020); https://academic.oup.com/cid/article-pdf/doi/10.1093/cid/ciaa939/33478095/ciaa939.pdf (last viewed August 6, 2020).

[11] See https://wwwnc.cdc.gov/eid/article/26/7/20-0764_article (last viewed August 6, 2020).

**B.** **Civil Authority Orders Because of COVID-19 and Related Physical Loss or Damage to Property**

33.     On March 16, 2020, and directly because of COVID-19, the CDC and the national Coronavirus Task Force, civil authorities regulating the effect of infectious disease, issued public guidance titled "30 Days to Slow the Spread" of COVID-19. The guidance called for extreme social distancing measures, such as working from home, avoiding gatherings of more than ten people, and avoiding discretionary travel, such as shopping at retail stores.

34.     Also directly because of COVID-19 and to protect property from further loss or damage, state and local governments imposed directives requiring residents to shelter in place or remain in their homes unless performing "essential" activities ("Stay at Home Orders").

35.     More recently, some medical researchers have advised that HEPA and other specialized air filtration systems can be used to remediate the presence of COVID-19.[12]

36.     Because COVID-19 physically affects the property on which it is present and can be transferred to individuals that come into contact with the surface of such property, thereby infecting that individual, the Stay at Home Orders were issued directly because of damage to property to minimize the spread of COVID-19 by reducing the likelihood of an individual's exposure to that property.

37.     Likewise, as evidenced by the recent advice that HEPA and other specialized air filtration systems can be utilized to remedy the presence of COVID-19, physical alteration of property may be necessary to render it safe from COVID-19 and return the property to a useable state.[13]

---

[12] See https://www.theatlantic.com/health/archive/2020/07/why-arent-we-talking-more-about-airborne-transmission/614737/ (last viewed August 6, 2020).
[13] Id.

38.     The Stay at Home Orders typically require businesses deemed "non-essential" to be closed and in-person work is forbidden. For example, on March 16, 2020, New York City Mayor Bill De Blasio issued Executive Order No. 100, which was intended to minimize the spread of COVID-19, emphasizing that COVID-19 "physically is causing property loss and damage." (N.Y.C. Exec. Order No. 100, attached as Exhibit C.)

39.     On March 19, 2020, the City of Los Angeles issued a "Safer at Home" order, detailing how COVID-19 "can spread easily from person to person and it is physically causing property loss or damage due to its tendency to attach to surfaces for prolonged periods of time." (Los Angeles Safer at Home Order, attached as Exhibit D.)

40.      On March 21, 2020, New Jersey Governor Phil Murphy issued Executive Order No. 107, mandating that New Jersey residents remain at their place of residence unless engaged in essential activities, cancelling gatherings of individuals, and closing brick-and-mortar premises of all non-essential retail businesses. (N.J. Exec. Order 107, attached as Exhibit E.)

41.     Positivity rates measure the number of positive tests from the total number of tests administered and are used for determining whether a particular area is prepared to reopen.[14]

42.     The WHO recommends that a particular area reach a 5% positivity rate or lower before reopening.[15]

43.     On March 28, 2020, the positivity rate for New York City was 71.2%, meaning that for every 1,000 people tested, 712 people tested positive.[16]

44.     As of July 31, 2020, the positivity rate in seven states and Puerto Rico was above 15%, which is more than three times higher than the recommended 5% rate.[17]

---

[14] See https://coronavirus.jhu.edu/testing/testing-positivity (last viewed August 6, 2020).
[15] See https://coronavirus.jhu.edu/testing/testing-positivity (last viewed August 6, 2020).
[16] See https://www1.nyc.gov/site/doh/covid/covid-19-data.page (last viewed August 6, 2020).
[17] See https://coronavirus.jhu.edu/testing/testing-positivity (last viewed August 6, 2020).

45.     Some Stay at Home Orders remain in effect and have caused the suspension of both non-essential and essential businesses.

46.     Despite reopening and loosening of restrictions under the Stay at Home Orders, many non-essential businesses have not returned operations to pre-loss levels.

47.     In some jurisdictions, new orders restricting or closing businesses have been issued as a direct result of a new presence of COVID-19, which has required some reopened stores to close again.[18]

48.     As a non-essential business with operations in locations under Stay at Home Orders, Ralph Lauren Corp. has been required to comply with applicable orders.

49.     Stay at Home Orders required complete closure of Ralph Lauren Corp. locations around the United States. Many of these locations have reopened, but are subject to government orders limiting operational capacity.

50.     Similar government orders in other countries have required Ralph Lauren Corp. locations around the world to close.

51.     COVID-19 and Stay at Home Orders have directly impacted Ralph Lauren Corp.'s operations and Ralph Lauren Corp.'s gross earnings and gross profit.  COVID-19 and Stay at Home Orders have also directly caused Ralph Lauren Corp. to incur extra costs to temporarily continue as nearly normal as practicable the conduct of its business.

52.     The restrictions and limitations on Ralph Lauren Corp.'s operations has caused substantial damage.

---

[18] See https://www.forbes.com/sites/bradjaphe/2020/07/13/california-is-closing-all-bars-and-indoor-restaurants-again-due-to-coronavirus-surge/#267428ba1517 (last viewed August 6, 2020); https://fortune.com/2020/06/27/texas-florida-close-bars-coronavirus/ (last viewed August 6, 2020).

53.    Despite efforts to prioritize online sales in the midst of store closures due to COVID-19, Ralph Lauren Corp.'s revenues dropped 66% for the first quarter as compared to the year before.[19]

54.    In North America alone, brick-and-mortar store sales fell 77% while wholesale sales plummeted 93% from the previous year.[20]

55.    Ralph Lauren Corp. has suffered direct physical loss and/or damage to its property due to COVID-19 and the Stay at Home Orders.

56.    Likewise, COVID-19 has caused direct physical loss and/or damage to property that Ralph Lauren Corp. does not own, occupy, lease, rent, or have insured under the Policy.

**C.    Ralph Lauren Corp.'s "All Risk" Policy**

57.    The Policy covers property at or within 1,000 feet of Ralph Lauren Corp.'s locations "against ALL RISKS OF PHYSICAL LOSS OR DAMAGE, except as hereinafter excluded …." (Exhibit A, at RLCPolicy_0008, RLCPolicy_0018.)

58.    Ralph Lauren Corp.'s covered locations include the stores listed in an appendix to the Policy.  These locations are referred to herein as "Ralph Lauren Corp. Locations."  (Exhibit A, at RLCPolicy_0085-106.)

59.    FMIC drafted the Policy.

60.    In addition to affording coverage for "ALL RISKS OF PHYSICAL LOSS OR DAMAGE," the Policy contains certain "ADDITIONAL COVERAGES."  Specifically, the Property Damage sections of the Policy provide that it "includes the following Additional Coverages for insured physical loss or damage."  (Exhibit A, at RLCPOLICY_0025.)

---

[19] See https://footwearnews.com/2020/business/earnings/ralph-lauren-q1-2021-earnings-sales-declines-1203036030/ (last viewed August 6, 2020).
[20] See https://footwearnews.com/2020/business/earnings/ralph-lauren-q1-2021-earnings-sales-declines-1203036030/ (last viewed August 6, 2020).

61.     One of the "Additional Coverages for insured physical loss or damage" is titled "COMMUNICABLE DISEASE RESPONSE."  (Exhibit A, at RLCPOLICY_0031.)

62.     Pursuant to the "COMMUNICABLE DISEASE RESPONSE" coverage, the Policy expressly covers, among other things, "the reasonable and necessary costs incurred … for the: 1) cleanup, removal and disposal of … **communicable diseases** from insured property."[21]  (Exhibit A, at RLCPolicy_0031.)

63.     "**Communicable disease**" is a cause of loss covered under the Policy.

64.     By including COMMUNICABLE DISEASE RESPONSE coverage as one of the "Additional Coverages for insured physical loss or damage," the Policy expressly acknowledges that **communicable disease** causes "insured physical loss or damage."

65.     Similarly, by providing for the "cleanup, removal and disposal of … **communicable disease**," the Policy explicitly recognize that **communicable disease** causes a physical, tangible alteration to the integrity of the property.

66.     Because the Policy specifically covers remediation of the damage caused by **communicable disease**, the physical damage to property caused by **communicable disease** is "physical damage of the type insured" under the Policy.

**1.     COVID-19 Triggered Coverage Under the "All Risks" Policy**

67.     The actual presence of COVID-19 at Ralph Lauren Corp. Locations has triggered coverage under the Policy.

68.     In addition, the presence of COVID-19 at or on property away from Ralph Lauren Corp. Locations has triggered coverage under the Policy.

---

[21] Terms defined in the Policy are signified by the use of **bold** typeface. Unless otherwise stated, the use of **bold** typeface signifies the use of same in the Policy.

69.     COVID-19 has caused and continues to cause physical loss and physical damage to property, including Ralph Lauren Corp.'s property.

70.     Indeed, COVID-19 has caused and continues to cause a physical, tangible alteration to the integrity of the property at and away from Ralph Lauren Corp. Locations and, therefore, has caused physical damage to such property.

71.     As well, COVID-19 has caused and continues to cause a physical loss to property at and away from Ralph Lauren Corp. Locations because it has eliminated the use and function of such property.

72.     COVID-19 also has caused and continues to cause Ralph Lauren Corp. to experience covered Time Element loss.

### 2.     Multiple Coverages Are Triggered Under the "All Risks" Policy

73.     In addition to triggering the Policy's "all risks" coverage, Ralph Lauren Corp.'s claim also triggers multiple "Other Additional Coverages," "Time Element Coverages," and "Time Element Coverage Extensions" provided under the Policy including but not limited to the following.

#### i.     *COVID-19 Triggered the Policy's Communicable Disease Response Coverage*

74.     The actual presence of COVID-19 at Ralph Lauren Corp. Locations has caused physical damage to property at such Ralph Lauren Corp. Locations resulting in limited, restricted, and/or prohibited access due to the issuance of orders by an authorized governmental agencies regulating communicable disease, thereby triggering coverage under the Policy's Communicable Disease Response coverage for the resulting loss.

75.     The actual presence of COVID-19 at Ralph Lauren Corp. Locations has caused physical damage to property at these locations resulting in decisions by Ralph Lauren Corp. to

limit, restrict, and/or prohibit access thereto, thereby triggering coverage under the Policy's Communicable Disease Response coverage for the resulting loss.

76. Upon information and belief the actual presence of COVID-19 continues to exist at Ralph Lauren Corp. Locations.

> ii. **_COVID-19 Triggered the Policy's Protection and Preservation of Property Coverage_**

77. COVID-19 has threatened and continues to threaten to cause physical loss and damage to insured property.

78. The actual and threatened physical loss or damage to insured property has caused Ralph Lauren Corp. to take action to temporarily protect or preserve its property, thereby triggering the Policy's Protection and Preservation of Property coverage.

> iii. **_COVID-19 Triggered the Policy's Time Element Coverage_**

79. The Policy affords coverage for Ralph Lauren Corp.'s Time Element loss, subject to the Policy's terms and conditions.

80. COVID-19 has caused Ralph Lauren Corp. to suffer Time Element loss as a direct result of physical loss and damage of the type insured under the Policy.

81. This loss triggers coverage under the Policy's Time Element provisions including, without limitation, coverage for Gross Earnings loss, Gross Profits loss, and Rental Income loss up to the Policy's applicable limits and sublimits.

> iv. **_COVID-19 Triggered the Policy's Extra Expense Coverage_**

82. COVID-19 has caused Ralph Lauren Corp. to incur reasonable and necessary extra expenses to temporarily continue as nearly normal as practicable the conduct of Ralph Lauren Corp.'s business. Such expenses are beyond those that would have normally been incurred in conducting the business absent the presence of COVID-19.

83.     The expenses incurred by Ralph Lauren Corp. beyond those necessary in the normal operation of its business solely as a result of the physical loss and damage caused by COVID-19 trigger coverage under the Policy's Extra Expense coverage.

### v.     COVID-19 Triggered the Policy's Civil Authority Coverage

84.     The physical damage caused by the presence of COVID-19 at property located at or within five (5) statute miles of Ralph Lauren Corp. Locations has directly resulted in the issuance of orders from civil authorities restricting and/or prohibiting access to Ralph Lauren Corp. Locations.

85.     Ralph Lauren Corp. has sustained and will continue to sustain Time Element loss because orders from civil authorities issued as a direct result of physical damage of the type insured at a Ralph Lauren Corp. Location or within five (5) statute miles of a Ralph Lauren Corp. Location, have prohibited or restricted access to Ralph Lauren Corp. Locations. This Time Element loss triggers coverage under the Policy's Civil or Military Authority coverage, subject to the Policy's applicable limits.

### vi.     COVID-19 Triggered the Policy's Contingent Time Element Extended Coverage

86.     The presence of COVID-19 at the locations of Ralph Lauren Corp.'s direct and indirect customers, suppliers, contract manufacturers, or contract service providers has caused physical loss or damage to property at such locations.

87.     In addition, the presence of COVID-19 at the locations of companies under a royalty, licensing fee and/or commission agreement with Ralph Lauren Corp. has caused physical loss and/or damage to property at such locations.

88.     Ralph Lauren Corp. has sustained and will continue to sustain Time Element loss as a result of the damage to property at the locations described in the previous two paragraphs, triggering coverage under the Policy's Contingent Time Element Extended coverage.

### vii.     COVID-19 Triggered the Policy's Ingress/Egress Coverage

89.     COVID-19 and the physical loss and damage it has caused has resulted in the necessary interruption of Ralph Lauren Corp.'s business by totally or partially preventing ingress to or egress from Ralph Lauren Corp. Locations as a direct result of physical loss and damage of the type insured to property of the type insured.

90.     The Time Element loss sustained by Ralph Lauren Corp. due to the necessary suspension of Ralph Lauren Corp.'s business as a result of the total or partial denial of access to Ralph Lauren Corp. Locations triggers coverage under the Policy's Ingress/Egress coverage.

### viii.     COVID-19 Triggered the Policy's Attraction Property Coverage

91.     COVID-19 also has caused and is continuing to cause physical loss and damage to property away from Ralph Lauren Corp. Locations, including property located within one (1) statute mile of Ralph Lauren Corp. Locations that attracts business to Ralph Lauren Corp. Locations.

92.     Ralph Lauren Corp. has sustained and will continue to sustain loss and extra expenses directly resulting from physical loss and damage of the type insured to property of the type insured that attracts business to Ralph Lauren Corp. Locations. These losses and extra expenses trigger coverage under the Policy's Attraction Property Coverage, subject to the Policy's applicable limits.

ix.     ***COVID-19 Triggered the Policy's Interruption by Communicable Disease Coverage***

93.     The actual presence of COVID-19 at Ralph Lauren Corp. Locations has resulted in the issuance of orders by authorized governmental agencies regulating communicable disease that limited, restricted, and/or prohibited access to such locations.

94.     The actual presence of COVID-19 at Ralph Lauren Corp. Locations has resulted in decisions by Ralph Lauren Corp. that limited, restricted, and/or prohibited access to such locations.

95.     The Time Element loss sustained by Ralph Lauren Corp. resulting from the civil authority orders and decisions by Ralph Lauren Corp. that limited, restricted, and/or prohibited access to Ralph Lauren Corp. Locations that were issued and/or made due to the actual presence of COVID-19 at Ralph Lauren Corp. Locations triggers coverage under the Policy's Interruption by Communicable Disease coverage.

### 3.     No Exclusion Impacts Coverage

96.     No exclusions in the Policy apply to preclude or limit coverage for Ralph Lauren Corp.'s claimed loss. To the extent FMIC contends that any exclusion applies, such exclusion is unenforceable.

### 4.     The Policy's Contamination Exclusion Does Not Apply

97.     The Policy's "Communicable Disease Response" coverage expressly covers, among other things, "the reasonable and necessary costs incurred … for the: 1) cleanup, removal and disposal of … **communicable diseases** from insured property." (Exhibit A, at RLCPolicy_0031.)

98.     FMIC has acknowledged in response to Ralph Lauren Corp.'s claim that COVID-19 is a **communicable disease** as that term is defined in the Policy.  (April 27, 2020 Letter from FMIC, attached as Exhibit F.)

15

99.     The Policy also contains an exclusion that purports to preclude coverage for "**contamination**." (Exhibit A, at RLCPolicy_0079.)

100.    The Policy defines "**contamination**" as, among other things, a "virus." (Exhibit A, at RLCPolicy_0079.)

101.    The Policy's "**contamination**" exclusion does not exclude coverage for loss caused by "communicable disease."

102.    The Policy's "**contamination**" exclusion does not exclude coverage for Ralph Lauren Corp.'s claim, which is based on the direct physical loss or damage caused by COVID-19 and the resulting Stay at Home Orders.

103.    To the extent FMIC contends that the Policy's "**contamination**" exclusion bars coverage for loss caused by "**communicable disease**" or some other aspect of Ralph Lauren Corp.'s claim, the Policy is ambiguous because it is susceptible to more than one reasonable interpretation and, therefore, must be construed in favor of coverage.  Royal Ins. Co. of Am. V. KSI Trading Corp., 563 F.3d 68, 74 (3d Cir. 2009) (Under New Jersey law, "[w]here genuine ambiguity exists, such that the controlling language will support two meanings, one favorable to the insurer, and the other favorable to the insured, the interpretation sustaining coverage must be applied.").

> **5.    The Policy's Communicable Disease Sublimits Do Not Cap Ralph Lauren Corp.'s Recovery**

104.    The Policy affords coverage to Ralph Lauren Corp. for the actual presence of **communicable disease** at a Ralph Lauren Corp. Location. This coverage is found under two sections of the Policy titled "Communicable Disease Response" and "Interruption by Communicable Disease" (together, the "On-Site Sublimited Communicable Disease Coverages").

16

105.    The On-Site Sublimited Communicable Disease Coverages, including any sublimits, do not apply to limit any other coverage under the Policy, including physical damage resulting from or caused by **communicable disease** away from Ralph Lauren Corp. Locations.

106.    Rather, coverage for physical loss and damage and/or resulting Time Element loss, from or caused by **communicable disease** away from Ralph Lauren Corp. Locations, is subject to the policy limits associated with the coverage or coverages implicated.

### D.    **FMIC's Fraudulent Conduct**

#### 1.    **FMIC Fraudulently Conducted a Directed Investigation of Ralph Lauren Corp.'s Claim**

107.    Aware that the Policy and others like it afford coverage for COVID-19 losses beyond the On-Site Sublimited Communicable Disease Coverages, FMIC devised a plan designed to steer its policyholders, including Ralph Lauren Corp., into at most, the On-Site Sublimited Communicable Disease Coverages for their COVID-19 loss.

108.    FMIC executed that plan in response to Ralph Lauren Corp.'s claim, consistently mischaracterizing the nature and scope of the claim despite repeated efforts from Ralph Lauren Corp. to correct FMIC's inaccurate statements.

109.    Ralph Lauren Corp. submitted its initial claim for coverage under the Policy on March 30, 2020, through its insurance broker, Willis Towers Watson ("WTW").  (March 30, 2020 e-mail containing claim, attached as Exhibit G.)

110.    The notice of claim specified that the "Type of Loss" was "Physical Damage & Time Element."  It further indicated that it was based on "Physical damage and time element losses due to Covid-19 impact on physical assets …."  (Exhibit G.)

111.    Following the submission of the claim, Ralph Lauren Corp.'s Senior Director of Risk Management, Jason Fenkel, on one occasion, and Michael Kennedy of WTW, on several occasions, spoke to Bill Reed, FMIC's Claims Manager, and colleagues.

112.    During these separate calls, Mr. Fenkel and Mr. Kennedy advised Mr. Reed that Ralph Lauren Corp.'s claim was based on the presence of COVID-19 on property, including at Ralph Lauren Corp. Locations, and the resulting Time Element loss.

113.    Over three weeks later, on April 22, 2020, FMIC sent a letter to Ralph Lauren Corp. acknowledging receipt of the claim and purporting to recap the conversation between Mr. Fenkel, Mr. Kennedy, and Mr. Reed.  (Exhibit H.)

114.    The April 22 letter failed to accurately characterize or address the claim and appeared to completely disregard the conversation between Mr. Fenkel, Mr Kennedy, and Mr. Reed.  (Exhibit H.)

115.    The April 22 letter states that coverage is potentially available to clean up, remove and dispose of COVID-19 from Ralph Lauren Corp. Locations because "COVID-19 meets the definition of a communicable disease under the [P]olicy."  (Exhibit H.)

116.    However, in the same letter, FMIC improperly attempted to narrow the scope of the claim to the Policy's On-Site Sublimited Communicable Disease Coverage.  (Exhibit H.)

117.    Following Ralph Lauren Corp.'s receipt of the April 22 letter, Michael Kennedy of WTW, called Mr. Reed on behalf of Ralph Lauren Corp. to address the inaccuracies in the April 22 letter and reemphasize the scope of the claim to Mr. Reed.

118.    FMIC sent another letter on April 27, 2020, which, again, disregarded the information provided to FMIC regarding the scope of Ralph Lauren Corp.'s claim and improperly

attempted to limit the claim to the Policy's On-Site Sublimited Communicable Disease Coverage. (Exhibit F.)

119.    In response, Ralph Lauren Corp.'s Associate General Counsel, Jonathan Shiffman, sent a letter to FMIC dated May 14, 2020, seeking to clarify FMIC's apparent confusion regarding Ralph Lauren Corp.'s claim.  (Exhibit I.)

120.    Mr. Shiffman noted that, despite the conversations with Mr. Fenkel and Mr. Kennedy regarding Ralph Lauren Corp.'s claim, FMIC's April 22 and 27 letters (the "April Letters") do not accurately reflect the coverage sought by Ralph Lauren Corp.'s claim.

121.    In particular, the May 14 letter states that:

> the April Letters do not acknowledge that [Ralph Lauren Corp.'s claim] also include[s] a claim under all coverages and coverage extensions in our policy that apply or potentially apply to losses and liabilities across [Ralph Lauren Corp.'s] entire global operations incurred by [Ralph Lauren Corp.] and all other insureds arising out of COVID-19 … including business interruption, time element, contingent time element losses resulting from civil &/or military authority, ingress/egress, all risk of physical loss or physical damage, and any other applicable covering provisions ….

(Exhibit I.)

122.    FMIC responded by letter dated June 5, 2020, in which it again attempted to improperly limit the scope of the claim to the Policy's On-Site Sublimited Communicable Disease Coverage.  (Exhibit J.)

123.    In response to Ralph Lauren Corp.'s claim for coverage other than On-Site Sublimited Communicable Disease Coverage, FMIC improperly asserted that all other coverage was excluded pursuant to the exclusion for "contamination" because "COVID-19 is a form of contamination as defined in our Policy …."  (Exhibit J.)

124.    Additionally, FMIC further contended that COVID-19 does not cause "physical damage of the type insured."  (Exhibit J.)

       2.    **FMIC Attempted to Steer Ralph Lauren Corp.'s Claim into the Policy's On-Site Sublimited Communicable Disease Coverages Pursuant to Its Fraudulent Scheme**

125.    FMIC's fraudulent conduct in its investigation is consistent with a systemic claims handling practice and procedure that FMIC has deployed across all COVID-19 claims.

126.    FMIC's systematic practice is outlined in a set of "Talking Points" (the "FMIC Talking Points") prepared for FMIC claim adjusters to use to ensure that FMIC's adjusters reach the same conclusion for all COVID-19 claims. (Copy of Talking Points, attached as Exhibit K.)

127.    FMIC drafted the FMIC Talking Points.

128.    FMIC provided the FMIC Talking Points to its personnel for use when adjusting claims based on COVID-19.

129.    The FMIC Talking Points explicitly acknowledge that FMIC "ha[s] a wide range of clients who may be affected in a variety of ways" by COVID-19.  (Exhibit K.)

130.    The FMIC Talking Points outline only a few of the many different coverages contained in FMIC's standard commercial property policies, including policies of the type FMIC sold to Ralph Lauren Corp., that specifically afford coverage for COVID-19 claims. (Exhibit K.)

131.    The FMIC Talking Points outline certain specific "triggers" of coverage that the adjuster should look for when investigating any COVID-19 claim. (Exhibit K.)

132.    Notably, the only "triggers" identified are those applicable to the On-Site Sublimited Communicable Disease Coverages.

133.    Indeed, the FMIC Talking Points fail to include all of the different "triggers" of coverage that may be implicated by COVID-19 claims.

134.     By including only the On-Site Sublimited Communicable Disease Coverages as coverages potentially applicable to a COVID-19 claim, the FMIC Talking Points steer adjusters to only seek information that pertains to the On-Site Sublimited Communicable Disease Coverages.

135.     Ironically, the FMIC Talking Points expressly acknowledge that a virus can cause physical damage to property.

136.     Nonetheless, the FMIC Talking Points expressly and unequivocally foreclose the availability of coverage under the Policy's Civil or Military Authority coverage provision for such physical damage without regard to the particular facts or law involved. (Exhibit K.)

137.     The FMIC Talking Points specifically provide:

Q. Does coverage under Civil or Military Authority apply?

A. No

(Exhibit K.)

138.     The FMIC Talking Points make similar statements with respect to certain of the Policy's Time Element coverages.  (Exhibit K.)

139.     The FMIC Talking Points further instruct that "the presence of a communicable disease does not constitute physical damage and is not of the type insured against as a virus falls within the definition of contamination, which is excluded." (Exhibit K.)

140.     But as alleged above, the Policy FMIC sold to Ralph Lauren Corp. expressly recognizes that the presence of communicable disease causes physical damage to property because it provides coverage for the resulting "cleanup, removal and disposal of … communicable disease." (Exhibit A, at RLCPolicy_0031.)

141.     FMIC, through the relevant adjuster(s), relied on the FMIC Talking Points in adjusting Ralph Lauren Corp.'s claim.

142.   The FMIC Talking Points direct the claims adjuster to reach conclusions without considering the specific facts of the particular claim and without considering the applicable law that governs interpretation of the relevant insurance policy.

143.   Instead, the FMIC Talking Points coach the adjuster to suggestively steer the policyholder toward the On-Site Sublimited Communicable Disease Coverages, which provide only a fraction of the coverage limits otherwise available under the Policy.

144.   FMIC followed the instructions of the Talking Points and denied coverage beyond the On-Site Sublimited Communicable Disease Coverages without fully considering the facts of Ralph Lauren Corp.'s claim or the law controlling the interpretation of the Policy.

145.   The FMIC Talking Points are contrary to the representations that FMIC made to Ralph Lauren Corp. regarding its claims handling practices in connection with the sale of insurance policies to Ralph Lauren Corp.

146.   The FMIC Talking Points reflect an unconscionable commercial practice and/or deceptive acts in connection with its subsequent performance following the sale of an insurance policy.

147.   The FMIC Talking Points are intended to defraud FMIC's policyholders from the coverage that each is contractually entitled to for the physical loss and damage to property caused by COVID-19.

148.   FMIC's unconscionable commercial practice and/or deceptive acts in connection with its subsequent performance following the sale of an insurance policy have compelled Ralph Lauren Corp. to institute this litigation to recover amounts it has been defrauded of.

149.   Due to FMIC's unconscionable commercial and/or deceptive acts, Ralph Lauren Corp. has suffered an ascertainable loss and is continuing to suffer ascertainable losses.

E.   **FMIC's Breach Under the Policy**

150.   Ralph Lauren Corp. has sustained loss covered under the Policy and, accordingly, submitted its claim to FMIC.  FMIC has wrongfully failed to accept full coverage for Ralph Lauren Corp.'s claim in breach of the Policy.

151.   FMIC has asserted the following coverage positions with respect to Ralph Lauren Corp.'s claim under the Policy: (i) coverage for Ralph Lauren Corp.'s claim is limited to the On-Site Sublimited Communicable Disease Coverage; (ii) COVID-19 does not cause physical damage of the type insured; and (iii) that coverage for COVID-19 is excluded pursuant to the "contamination" exclusion.  All of these coverage positions are wrong and constitute a wrongful denial of coverage for Ralph Lauren Corp.'s claim under the Policy.

152.   In denying Ralphs Lauren's claim, FMIC failed to faithfully apply the language of the Policy it drafted, failed to conduct a reasonable investigation, and failed to consider the facts relevant to Ralph Lauren Corp.'s claim against the language of the Policy as interpreted pursuant to New Jersey law.

153.   As a consequence of FMIC's wrongful denial of coverage and fraudulent conduct, Ralph Lauren Corp. has suffered and continues to suffer significant damages.

## V.   CAUSES OF ACTION

### COUNT I
### Declaratory Judgment

154.   Ralph Lauren Corp. repeats and realleges the allegations in the preceding paragraphs.

155.   Ralph Lauren Corp. seeks a declaration of the parties' rights and duties under the Policy pursuant to 28 U.S.C. § 2201. A justiciable controversy exists between Ralph Lauren Corp.

and FMIC concerning the availability of coverage under the Policy for Ralph Lauren Corp.'s claim.

156.    The controversy between Ralph Lauren Corp. and FMIC is ripe for judicial review.

157.    New Jersey has adopted the Uniform Declaratory Judgment Act for purposes of declaring parties' right in this precise circumstance.

158.    Accordingly, Ralph Lauren Corp. seeks a declaration from the Court that:

> (1)    Each coverage provision identified herein is triggered by Ralph Lauren Corp.'s claim;
>
> (2)    No exclusion in the Policy applies to bar or limit coverage for Ralph Lauren Corp.'s claim;
>
> (3)    The limit applicable to the On-Site Sublimited Communicable Disease Coverages does not apply to coverage applicable to physical loss or damage away from Ralph Lauren Corp.'s Locations;
>
> (4)    The Policy covers Ralph Lauren Corp.'s claim;
>
> (5)    FMIC violated the New Jersey Consumer Fraud Act; and
>
> (6)    Any other declaratory relief that would be useful to the resolution of the dispute between the parties.

**COUNT II**
**Breach of Contract**
**(Property Damage)**

159.    Ralph Lauren Corp. repeats and realleges the allegations in the preceding paragraphs.

160.    The Policy is valid and enforceable contract between Ralph Lauren Corp. and FMIC.

161.    In the Policy, FMIC agreed to cover property against all risks of physical loss or damage not otherwise excluded.

162.    COVID-19 has caused and is continuing to cause physical loss and/or damage to Ralph Lauren Corp.'s property.

163.    No exclusions apply to bar coverage.

164.    Ralph Lauren Corp. is entitled to coverage for the physical loss and/or damage up to the Policy's $700 million limit of liability or any applicable sublimits.

165.    Ralph Lauren Corp. complied with all applicable provisions in the Policy and satisfied all conditions precedent to coverage, including paying premiums and providing timely notice of its claim.  To the extent FMIC contends otherwise, any such conditions have been waived.

166.    Nonetheless, FMIC unjustifiably refuses to pay for Ralph Lauren Corp.'s loss in breach of the Policy.

167.    Ralph Lauren Corp. has suffered and continues to suffer damages as a result of FMIC's breach of the Policy.

168.    Ralph Lauren Corp. is entitled to damages as a result of FMIC's breach in an amount to be determined at trial, including pre- and post-judgment interest and any other costs and relief that this Court deems appropriate.

## COUNT III
## Breach of Contract
## (Time Element)

169.    Ralph Lauren Corp. repeats and realleges the allegations in the preceding paragraphs.

170.    The Policy is a valid and enforceable contract between Ralph Lauren Corp. and FMIC.

171.    In the Policy, FMIC agreed to cover Time Element loss and incurred Extra Expense directly resulting from physical loss or damage of the type insured under the Policy as provided in the Time Element Coverages.

172.    COVID-19 has caused and, upon information and belief, is continuing to cause physical loss and/or damage to Ralph Lauren Corp.'s property and the property of others that has caused Ralph Lauren Corp. to suffer Time Element loss and incur extra expenses.

173.    No exclusions apply to bar coverage.

174.    Ralph Lauren Corp. is entitled to coverage for its Time Element loss and incurred extra expenses related to COVID-19 up to the Policy's limit of liability or any applicable sublimits.

175.    Ralph Lauren Corp. complied with all applicable provisions of the Policy, including paying premiums and providing timely notice of its claim.

176.    Nonetheless, FMIC unjustifiably refuses to pay for Ralph Lauren Corp.'s loss and expenses in breach of the Policy.

177.    Ralph Lauren Corp. has suffered and continues to suffer damages as a result of FMIC's breach of the Policy.

178.    Ralph Lauren Corp. is entitled to damages as a result of FMIC's breach in an amount to be determined at trial, including pre- and post-judgment interest and any other costs and relief that this Court deems appropriate.

**COUNT IV**
**Breach of Contract**
**(Time Element Coverage Extensions)**

179.    Ralph Lauren Corp. repeats and realleges the allegations in the preceding paragraphs.

180.    The Policy is a valid and enforceable contract between Ralph Lauren Corp. and FMIC.

181.    In the Policy, FMIC agreed to afford coverage for Time Element loss as provided in the Policy's Time Element Coverage Extensions.

182.    COVID-19 has caused and, upon information and belief, is continuing to cause physical loss and/or damage to Ralph Lauren Corp.'s property and the property of others that has caused Ralph Lauren Corp. to suffer business interruption loss covered under the Policy's Time Element Coverage Extensions.

183.    No exclusions apply to bar coverage.

184.    Ralph Lauren Corp. is entitled to coverage for its business interruption loss related to COVID-19 up to each Time Element Coverage Extensions' limit of liability or any applicable sublimits.

185.    Ralph Lauren Corp. complied with all applicable provisions of the Policy, including paying premiums and providing timely notice of its claim.

186.    Nonetheless, FMIC unjustifiably refuses to pay for these losses and expenses in breach of the Policy.

187.    Ralph Lauren Corp. has suffered and continues to suffer damages as a result of FMIC's breach of the Policy.

188.    Ralph Lauren Corp. is entitled to damages as a result of FMIC's breach in an amount to be determined at trial, including pre- and post-judgment interest and any other costs and relief that this Court deems appropriate.

**COUNT VI**
**Violation of the New Jersey Consumer Fraud Act – N.J.S.A 56:8-2**

189.     Ralph Lauren Corp. repeats and realleges the allegations in the preceding paragraphs.

190.     In connection with its efforts to sell insurance policies to Ralph Lauren Corp., FMIC represented that it would evaluate claims on a good faith basis consistent with the plain language of the policy and pursuant to the law governing the interpretation of that policy.

191.     Instead of doing what it represented it would do, FMIC implemented a systemic claims handling practice intended to defraud its policyholders, including Ralph Lauren Corp., of the full extent of coverage it was contractually required to provide.

192.     Indeed, through the FMIC Talking Points, FMIC attempted to minimize the coverage for claims based on COVID-19 without regard to the plain language of the relevant policy and without regard to the law governing the relevant policy's interpretation.

193.     FMIC adhered to this practice when it failed to investigate Ralph Lauren Corp.'s claim adequately and attempted to limit the claim to the On-Site Sublimited Communicable Disease Coverages.

194.     FMIC's systemic claims handling practice of mischaracterizing the facts provided by policyholders in connection with claims for losses from COVID-19 for purposes of minimizing the coverage available constitutes an unconscionable commercial practice and/or deceptive act in connection with its subsequent performance following the sale of insurance.

195.     FMIC's systemic practice of attempting to influence and direct policyholders' claims for losses from COVID-19 to the On-Site Sublimited Communicable Disease Coverages constitutes an unconscionable commercial practice and/or deceptive act in connection with its subsequent performance following the sale of insurance.

196.  FMIC's use of the FMIC Talking Points with pre-determined conclusions regarding coverage for claims based on losses from COVID-19 constitutes an unconscionable commercial practice and/or deceptive act in connection with their subsequent performance following the sale of insurance.

197.  FMIC's use of the FMIC Talking Points, which are designed to coach its claim adjusters to steer the policyholder to the On-Site Sublimited Communicable Disease Coverages in order to avoid the full coverage available under the policy, constitutes an unconscionable commercial practice and/or deceptive act in connection with it subsequent performance following the sale of insurance.

198.  FMIC's systemic practice and policy of denying coverage for claims by policyholders for losses from COVID-19 without conducting an adequate investigation of the facts and the applicable law constitutes an unconscionable commercial practice and/or deceptive act in connection with its subsequent performance following the sale of insurance.

199.  FMIC has created and implemented a fraudulent system for the evaluation of claims related to losses based on COVID-19, which constitutes an unconscionable commercial practice and/or deceptive act in connection with their subsequent performance following the sale of insurance.

200.  FMIC's unconscionable commercial practices and/or deceptive acts intended to improperly restrict Ralph Lauren Corp.'s recovery to the On-Site Sublimited Communicable Disease Coverages compelled Ralph Lauren Corp. to institute this litigation to recover amounts it is contractually entitled to under the Policy.

201.  Due to FMIC's unconscionable commercial practices and/or deceptive acts, Ralph Lauren Corp. has suffered an ascertainable loss and is continuing to suffer ascertainable losses.

202.    Ralph Lauren Corp. is entitled to an award of damages under the New Jersey Consumer Fraud Act as a result of FMIC's unconscionable commercial practices and/or deceptive acts in an amount to be determined at trial, including attorney's fees, pre- and post-judgment interest and any other costs and relief that this Court deems appropriate.

## VI.    PRAYER FOR RELIEF

**Wherefore**, Ralph Lauren Corp. prays for judgment against FMIC as follows:

(1) A declaration from the Court that:

    a.  Each of the coverage provisions identified herein is triggered by Ralph Lauren Corp.'s claim;

    b.  No exclusion under the Policy applies to bar or limit coverage for Ralph Lauren Corp.'s claim;

    c.  The limit applicable to the On-Site Sublimited Communicable Disease Coverages does not apply to coverage applicable to physical loss or damage away from Ralph Lauren Corp.'s Locations;

    d.  The Policy cover Ralph Lauren Corp.'s claim;

    e.  FMIC violated the New Jersey Consumer Fraud Act; and

    f.  Any other declaratory relief that would be useful to the resolution of the dispute between the parties.

(2) For special and consequential damages against FMIC in an amount to be proved at trial in excess of $75,000.00.

(3) Pre- and post-judgment interest as provided by law;

(4) An award of attorney's fees and costs of suit incurred; and

(5) For such other and further relief as the Court deems just and proper.

## VII.    JURY TRIAL DEMANDED

Ralph Lauren Corp. demands trial by jury on all issues so triable.

Dated: August 7, 2020               Respectfully submitted,
                                     HUNTON ANDREWS KURTH LLP

/s/ Kevin V. Small
Kevin V. Small (NJ Bar No. 073422013)
ksmall@HuntonAK.com
200 Park Avenue
New York, NY 10166
Tel: (222) 309-1226
Fax: (212) 309-1100

Walter J. Andrews (*pro hac vice* forthcoming)
wandrews @HuntonAK.com
1111 Brickell Ave, 25th Floor
Miami, FL 33131
Tel: (305) 810-2500
Fax: (305) 810-2460

Michael S. Levine (*pro hac vice* forthcoming)
Matthew J. Revis (*pro hac vice* forthcoming)
mlevine@HuntonAK.com
mrevis@HuntonAK.com
2200 Pennsylvania Avenue, NW
Washington, D.C. 20037
Tel: (202) 955-1857
Tel: (202) 419-2125
Fax: (202) 778-2201

*Attorneys for Plaintiff Ralph Lauren Corporation*