<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RALPH LAUREN CORPORATION,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>FACTORY MUTUAL INSURANCE COMPANY,<br><br>　　　　　Defendant. | Civil Action No. 20-10167 (SDW) (LDW)<br><br>**OPINION**<br><br>May 12, 2021 |

**WIGENTON,** District Judge.

　　　Before this Court are Plaintiff Ralph Lauren Corporation's ("Plaintiff") Motion for Partial Judgment on the Pleadings and Factory Mutual Insurance Company's ("Defendant") Cross-Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure ("Rule") 12(c). This Court has jurisdiction pursuant to 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. § 1391(b). This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Rule 78. For the reasons stated herein, Plaintiff's Motion is **DENIED** and Defendant's Cross-Motion is **GRANTED**.

**I.　　BACKGROUND AND PROCEDURAL HISTORY**

　　　Founded in 1967, Plaintiff is a "global leader" in the business of designing, marketing, and distributing premium lifestyle products such as clothing and accessories. (D.E. 1 ¶ 7.) Plaintiff operates over 1,000 stores globally. (*Id.* ¶ 9.) When the COVID-19 pandemic reached the United States ("U.S.") in early 2020, public officials across the country, including those in New Jersey, New York City, and Los Angeles issued emergency orders ("Stay-at-Home Orders") to prevent

1

the spread of SARS-CoV-2 (the "Virus").  (*Id.* ¶¶ 23–24, 34, 38–40; D.E. 30-1 at 2.)  The Stay-at-Home Orders "typically require[d] . . . 'non-essential'" businesses to close, including Plaintiff's stores in applicable U.S. locations and other countries with similar government orders.  (D.E. 1 ¶¶ 38, 48–50.)  Many U.S. locations subsequently opened, subject to government orders that limited operational capacity.  (*Id.* ¶ 49.)  The government restrictions caused Plaintiff "substantial damage" (*id.* ¶ 52)—from expenses incurred to continue business as practicable to lost profits.  (*See id.* ¶ 51.)  Plaintiff also avers that COVID-19 and the Stay-at-Home Orders caused it to suffer "direct physical loss and/or damage to its property."  (*Id.* ¶ 55.)

On March 30, 2020, Plaintiff filed an initial claim for insurance coverage under a policy (the "Policy") issued by Defendant.[1]  (*Id.* ¶¶ 14, 109.)  The Policy insures Plaintiff's covered locations "against all risks of physical loss or damage, except as [ ] excluded."  (D.E. 1-1 ("P.") at 1.)[2]  Plaintiff maintains that its claim falls under the following "Property Damage" and "Time Element" Policy provisions:

| Provision | Providing Certain Coverage . . . |
|---|---|
| *Protection and Preservation of Property* (Property Damage) | "for actions to temporarily protect or preserve insured property; provided such actions are necessary due to actual, or to prevent immediately impending, insured physical loss or damage to such insured property."  (P. at 40; D.E. 1 ¶¶ 77–78.) |
| *Time Element* | "subject to the applicable limit of liability that applies to the insured physical loss or damage . . . ."  (P. at 46; D.E. 1 ¶¶ 79–81.) |
| *Extra Expense* (Time Element) | "to temporarily continue as nearly normal as practicable the conduct of the Insured's business[.]"  (P. at 50; D.E. 1 ¶¶ 82–83.) |

---

[1] Plaintiff was insured under Policy No. 1051410, covering a period from May 1, 2019 to May 1, 2020.  (D.E. 1 ¶ 14.)  Plaintiff also claims Defendant issued a "substantially similar" policy for a period covering May 1, 2020 through May 1, 2021.  (*Id.* ¶ 15.)  Because Plaintiff narrowed its breach of contract claims to "the Policy" (*see id.* ¶¶ 159–88), failed to include a copy of the subsequent policy with its pleadings, and never alleged it filed a claim under the subsequent policy, this Court's decision is confined to the Policy for the term May 1, 2019 to May 1, 2020.

[2] Consistent with the parties' briefing, this Court refers to the Bates Stamp pagination in Docket Entry Number 1-1.  Otherwise, page references the Complaint's exhibits refer to the CM/ECF pagination generated in the upper-righthand corner.  Appendix A to the Policy is a list of covered locations encompassing hundreds of Plaintiff's stores worldwide.  (*See* P. at 85–106.)

2

| | |
|---|---|
| *Civil or Military Authority* (Time Element) | "if an order of civil or military authority limits, restricts or prohibits partial or total access to an insured location provided such order is the direct result of physical damage of the type insured at the insured location or within five statute miles . . . of it."  (P. 58; D.E. 1 ¶¶ 84–85.) |
| *Contingent Time Element Extended* (Time Element) | "directly resulting from physical loss or damage of the type insured to property of the type insured at contingent time element locations . . . ." (P. at 58; D.E. 1 ¶¶ 86–88.) |
| *Ingress/Egress* (Time Element) | "due to the necessary interruption of the Insured's business due to partial or total physical prevention of ingress to or egress from an insured location, whether or not the premises or property of the Insured is damaged, provided that such prevention is a direct result of physical damage of the type insured to property of the type insured." (P. at 59; D.E. 1 ¶¶ 89–90.) |
| *Attraction Property* (Time Element) | "directly resulting from physical loss or damage of the type insured to property of the type insured that attracts business to an insured location and is within 1 statute mile . . . of the insured location." (P. at 62; D.E. 1 ¶¶ 91–92.) |
| *Communicable Disease Response* (Property Damage) & *Interruption by Communicable Disease* (Time Element)[3] | "[i]f a location owned, leased or rented by the Insured has the actual not suspected presence of communicable disease and access to such location is limited, restricted or prohibited by: 1) an order of an authorized governmental agency regulating the actual not suspected presence of communicable disease; or 2) a decision of an Officer of the Insured as a result of the actual not suspected presence of communicable disease[.]" (P. at 31–32, 65; D.E. 1 ¶¶ 61–66, 74–76, 93–95.) |

The Policy excludes coverage for "contamination, and any cost due to contamination including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy," unless "directly resulting from other physical damage not excluded" under the Policy ("Contamination Exclusion").  (P. at 23.)  "Contamination" is defined as "any condition of property due to the actual or suspected presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, fungus, mold or mildew." (P. at 79.)

After Plaintiff's claim was denied (D.E. 1 ¶¶ 152–53), it filed suit seeking a declaratory

---

[3] Together, the "Communicable Disease Provisions." "Communicable Disease" is defined as a "disease which is . . . transmissible from human to human by direct or indirect contact with an affected individual or the individual's discharges, or . . . Legionellosis." (P. 79.)

judgment for Defendant's alleged breach of contract under the Policy provisions stated above (Counts I–IV). (*Id.* ¶¶ 154–88.) Plaintiff also lodged a claim under the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-2, for Defendant's allegedly fraudulent processing of COVID-19 insurance claims (Count VI). (*Id.* ¶¶ 189–202.) Thereafter, Plaintiff moved for partial judgment on the pleadings, and Defendant cross-moved for judgment on the pleadings. (D.E. 30, 38.) All briefing was timely filed. (D.E. 44, 49.) Additionally, this Court is in receipt of the parties' supplemental submissions. (D.E. 52, 53, 54, 55, 56, 57, 58.)

## II. LEGAL STANDARD

When examining a motion for judgment on the pleadings under Rule 12(c), the court examines the pleadings in the same manner as it would a Rule 12(b)(6) motion to dismiss.[4] *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008). The court must "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Id.* Judgment may only be granted if "the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Id.* The court may rely only on the pleadings and documents integral to or relied on by the complaint. *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 256 n.5 (3d Cir. 2004).

## III. DISCUSSION

---

[4] An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief"). In considering a Motion to Dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (external citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### A. Breach of Contract & Declaratory Judgment Claims[5]
### i. Physical Loss or Damage Provisions

Plaintiff's breach of contract and declaratory judgment claims require Plaintiff to establish that it is entitled to coverage "within the basic terms of the [Policy]." *See, e.g.*, *Arthur Anderson LLP v. Fed. Ins. Co.*, 3 A.3d 1279, 1287 (N.J. Super. Ct. App. Div. 2010). As discussed below, Plaintiff fails to meet its burden. Apart from the Communicable Disease Provisions, the Property Damage and Time Element provisions at issue unambiguously limit coverage for "physical loss or damage" or for the prevention of "immediately impending[ ] physical loss or damage" either to Plaintiff's insured properties or other properties within a one or five mile vicinity. (P. at 40, 46, 50, 58–59, 62.) Plaintiff's pleading contains no specific allegations regarding physical loss or damage to its covered properties, surrounding properties, or an "immediately impending" risk of the same. (*See generally* D.E. 1.) To the extent Plaintiff maintains that the Stay-at-Home Orders and occupancy restrictions forced the shuttering of its stores and reduced operations because of COVID-19 or an "imminent threat" of COVID-19 (*see, e.g.*, D.E. 30-1 at 30–34; *see also* D.E. 1 ¶¶ 47–52), these allegations are insufficient. *See, e.g.*, *Mac Prop. Grp. LLC v. Selective Fire & Cas. Ins. Co.*, No. L-2629-20, 2020 WL 7422374, at *8–9 (N.J. Super. Ct. Nov. 5, 2020) (finding

---

[5] As a federal court sitting in diversity, this Court applies New Jersey's choice-of-law rules to determine which state law controls. *See Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496 (1941); *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 206 (3d Cir. 2013); *Shapiro v. Logitech, Inc.*, No. 17-673, 2019 WL 397989, at *6–7 (D.N.J. Jan. 31, 2019). "New Jersey has adopted the [two-part] 'most significant relationship' test set forth in the Restatement (Second) of Conflict of Laws." *Maniscalco*, 709 F.3d at 206 (internal citation omitted). The first step of the inquiry is to determine whether an actual conflict exists. *See P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 459–60 (N.J. 2008). "If there is not an actual conflict, the inquiry is over and, because New Jersey would apply its own law in such a case, a federal court sitting in diversity must do the same." *Lebegern v. Forman*, 471 F.3d 424, 428 (3d Cir. 2006). Although Plaintiff maintains that it was required to close stores across the globe pursuant to various Stay-at-Home Orders, it fails to specify which locations were affected by such orders and neither party engages in a meaningful choice of law analysis. (*See* D.E. 38-1 at 9 n.6 (expressing that there is no "real conflict between the laws of California, New York, and New Jersey []or . . . any of the other states in which Plaintiff has a store[] as they relate to contract interpretation"); D.E. 44 at 4 n.1 (encouraging this Court to "accept [Defendant's] concession that New Jersey law applies to this case").) Accordingly, this Court is satisfied that there is no conflict between the applicable laws of the states where Stay-at-Home Orders were issued as referenced specifically in the Complaint—New Jersey, New York, and California—and will apply New Jersey law to the instant dispute.

"no direct physical loss or damage to property" resulting from an "order of civil authority" addressing COVID-19) (distinguishing *Wakefern Food Corp. v. Liberty Mutual Fire Ins. Co.*, No. 968 A.2d 724 (N.J. App. Div.), *certif. denied* 976 A.2d 385 (N.J. 2009)); *see Causeway Auto., LLC v. Zurich Am. Ins. Co.*, No. 20-8393, 2021 WL 486917, at *6–7 (D.N.J. Feb. 10, 2021). Nor does the alleged "presence" of the Virus in or around Plaintiff's stores equate to actual or imminent physical loss or damage of any sort.[6] Consistent with other courts' contractual interpretations in similar COVID-19-related insurance disputes, Plaintiff's allegations are not enough. *See, e.g.*, *Handel v. Allstate Ins. Co.*, No. 20-3198, 2020 WL 6545893, at *3 (E.D. Pa. Nov. 6, 2020) (relying on *Port Auth. of New York & New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 235 (3d Cir. 2002)) (noting that physical loss or damage requires "that the functionality of the property 'was nearly eliminated or destroyed' or the 'property was made useless or uninhabitable'").[7]

---

[6] Although the Virus can harm humans, it does not physically alter structures and therefore does not result in coverable property loss or damage. *See, e.g.*, *Terry Black's Barbeque, LLC v. State Auto. Mut. Ins. Co.*, No. 20-665, 2020 WL 7351246, at *7 (W.D. Tex. Dec. 14, 2020) (determining that the presence of COVID-19 alone does not constitute physical loss or damage to property "because the virus can be eliminated" and "does not threaten the structures covered by property insurance policies"); *Uncork & Create LLC v. Cincinnati Ins. Co.*, No. 20-401, 2020 WL 6436948, at *4–5 (S.D.W. Va. Nov. 2, 2020) (noting that "even when present, COVID-19 does not threaten the inanimate structures covered by property insurance policies, and its presence on surfaces can be eliminated with disinfectant"); *Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, No. 20-907, 2020 WL 5847570, at *1 (S.D. Cal. Oct. 1, 2020) (holding that "the presence of the virus itself, or of individuals infected [with] the virus, at [p]laintiffs' business premises or elsewhere do not constitute direct physical losses of or damage to property"); *Turek Enter., Inc. v. State Farm Mut. Auto. Ins. Co.*, 484 F. Supp. 3d 492, 502 (E.D. Mich. 2020) (holding that "direct physical loss" is unambiguous and requires a showing of "tangible damage" to property).

Furthermore, while the transmissibility and various health concerns associated with the Virus that causes COVID-19 are real and have been fluid throughout the pandemic, this Court declines to judicially notice or artificially presume that COVID-19 or the Virus that causes it were present "everywhere," including at all of Plaintiff's covered locations. (*See* D.E. 30-1 at 19–24; *see id.* at 8 n.2.)

[7] *See 7th Inning Stretch LLC v. Arch Ins. Co.*, No. 20-8161, 2021 WL 1153147, at *2 (D.N.J. Mar. 26, 2021); *Downs Ford, Inc. v. Zurich Am. Ins. Co.*, No. 20-8595, 2021 WL 1138141, at *4 (D.N.J. Mar. 25, 2021); *Café Plaza de Mesilla, Inc. v. Cont'l Cas. Co.*, No. 20-354, 2021 WL 601880, at *5–6 (D.N.M. Feb. 16, 2021); *ATCM Optical, Inc. v. Twin City Fire Ins. Co.*, No. 20-4238, 2021 WL 131282, at *4–8 (E.D. Pa. Jan. 14, 2021); *Part Two LLC v. Owners Ins. Co.*, No. 20-1047, 2021 WL 135319, at *3–4 (N.D. Ala. Jan. 14, 2021); *Riverwalk Seafood Grill, Inc. v. Travelers Cas. Ins. Co. of Am.*, No. 20-3768, 2021 WL 81659, at *3–4 (N.D. Ill. Jan. 7, 2021); *Boulevard Carroll Entm't Grp., Inc. v. Fireman's Fund Ins. Co.*, No. 11771, 2020 WL 7338081, at *2 (D.N.J. Dec. 14, 2020); *Chattanooga Prof'l Baseball Inc. v. Baseball LLC*, No. 20-01312, 2020 WL 6699480, *3 (D. Ariz. Nov. 13, 2020); *Hillcrest Optical, Inc. v. Cont'l Cas. Co.*, No. 20-275, 2020 WL 6163142, at *9 (S.D. Ala. Oct. 21, 2020); *Henry's La. Grill, Inc. v. Allied Ins. Co. of Am.*, No. 20-2939, 2020 WL 5938755, at *5–6 (N.D. Ga. Oct. 6, 2020); *Malaube, LLC v. Greenwich Ins.*

In any event, even if Plaintiff *did* plead the existence of actual or imminent "physical loss or damage," its claim fails under the Contamination Exclusion. Insurance policy exclusions must be narrowly construed, and insurers bear the burden to establish that an exclusion should apply. *Am. Motorists Ins. Co. v. L-C-A Sales Co.*, 713 A.2d 1007, 1013 (N.J. 1998). New Jersey courts "adhere to the principle that an insurance policy should generally be interpreted 'according to its plain and ordinary meaning,' so as not to disregard the 'clear import and intent' of a policy exclusion." *Id.* (citations omitted). Here, the Contamination Exclusion unambiguously excludes coverage for "any condition of property due to the actual or suspected presence of any . . . virus" (P. 79), which would encompass the Virus that causes COVID-19.[8] *See, e.g.*, *Manhattan Partners, LLC v. Am. Guarantee & Liab. Ins. Co.*, No. 20-14342, 2021 WL 1016113, at *2 n.3 (D.N.J. Mar. 17, 2021). Furthermore, because the Stay-at-Home Orders were issued to mitigate the spread of the highly contagious Virus, the relief Plaintiff seeks is tied inextricably to the suspected presence of the Virus and is not recoverable under the Policy. *See, e.g.*, *Mac Prop.*, 2020 WL 7422374, at *8–9 (dismissing claims for coverage where plaintiff's policy contained a virus exclusion).

### ii. Communicable Disease Provisions

In addition, Plaintiff's claim under the Communicable Disease Provisions is fatal due to

---

*Co.*, No. 20-22615, 2020 WL 5051581, at *8 (S.D. Fla. Aug. 26, 2020); *see also Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London Known as Syndicate PEM 4000*, 489 F. Supp. 3d 1303, 1307–09 (M.D. Fla. 2020); *10E, LLC v. Travelers Indem. Co. of Conn.*, 483 F. Supp. 3d 828, 836 (C.D. Cal. 2020); *Diesel Barbershop v. State Farm Lloyds*, 479 F. Supp. 3d 353, 360 (W.D. Tex. 2020).

[8] This Court declines to follow the non-binding decision in *Thor Equities, LLC v. Factory Mutual Insurance Company*, which found an identical contamination exclusion ambiguous. *See* No. 20-3380, 2021 WL 1226983 (S.D.N.Y. Mar. 31, 2021). As in *Thor Equities*, Plaintiff here attempts to restrict the Contamination Exclusion to expended "costs" only. (D.E. 44 at 30–31; D.E. 55.) This distinction is superfluous. Indeed, the court in *Thor Equities* acknowledged that "[p]laintiff's reading of the exclusion could tend to render certain aspects of the exclusion meaningless." 2021 WL 1226983, at *4; (*see* D.E. 56 at 2 (arguing that the conjunctive use of "and"—specifically, "*contamination, and any cost due to contamination including the inability to use or occupy property*" (P. at 23) (emphasis added)—destroys Plaintiff's proffered interpretation of the exclusion).) Moreover, Plaintiff's assertion that a "virus" must be different from a "communicable disease," as defined by the Policy, is a red herring. (*See, e.g.*, D.E. 30-1 at 35–39.) Plaintiff's interpretation of what constitutes a "virus" would eviscerate the undisputed fact that "SARS-CoV-2 is a virus that causes the COVID-19 disease." (*Id.* at 2.)

the lack of "the actual *not suspected* presence of [COVID-19]" at Plaintiff's covered locations.[9] (P. 31–32, 65) (emphasis added). Notably, Plaintiff does not allege that any of its on-site customers or employees had COVID-19; nor does it provide any other basis to conclude that COVID-19 was present at one or more of its covered locations.[10] (*See generally* D.E. 1.) As a result, Plaintiff's arguments for coverage under the Communicable Disease Provisions must fail. *See, e.g.*, *Dakota Girls, LLC v. Philadelphia Indem. Ins. Co.*, No. 20-2035, 2021 WL 858489, at *8 (S.D. Ohio Mar. 8, 2021) (granting motion to dismiss for failure to plead facts sufficient to trigger communicable disease coverage where plaintiff alleged individuals on its premises exhibited COVID-19 symptoms, but ultimately "were not tested for the disease").[11] Undoubtedly, the COVID-19 pandemic has altered the way in which businesses operate to prevent the Virus's spread. Although this Court is sympathetic to the very real losses businesses have suffered, it cannot grant Plaintiff the relief it seeks under the Policy's unambiguous terms. Thus, Defendant's cross-motion for judgment on the pleadings with respect to Counts I through IV is **GRANTED**.

### B.  NJCFA Claim[12]

---

[9] The parties do not dispute that COVID-19 constitutes a "Communicable Disease" as defined under the Policy. (D.E. 30-1 at 28; *see* D.E. 38-1 at 26 n.19; *see also* D.E. 1-6, Ex. F at 2.) As noted previously, however, this Court will not judicially notice that COVID-19 existed "everywhere" at Plaintiff's covered locations. (*See supra*, note 6.)

[10] Critically absent from the pleading is an allegation to support Plaintiff's contention in reply that "scores of people passed through [its] stores, some of them spreading COVID-19 as they went[.]" (*Compare* D.E. 44 at 17, *with* D.E. 1.) In addition, coverage under the Communicable Disease Provisions is problematic under its second prerequisite requiring "limited, restricted or prohibited" access to a covered location due to "an order of an authorized governmental agency." (P. 31, 65.) To meet this prong, Plaintiff essentially asks this Court to assume that *every* covered location across the globe was subject to a government's Stay-at-Home Order; however, the Complaint specifically refers to orders in only two cities and one state in the U.S. (*See* D.E. 1 ¶¶ 38–40.)

[11] *See also Blue Coral, LLC v. W. Bend Mut. Ins. Co.*, No. 20-496, 2021 WL 1395771, at *4 (E.D.N.C. Apr. 13, 2021); *Windber Hosp. v. Travelers Prop. Cas. Co. of Am.*, No. 20-080, 2021 WL 1061849, at *5 (W.D. Pa. Mar. 18, 2021); *Cf. Baldwin Acad., Inc. v. Markel Ins. Co.*, No. 20-2004, 2020 WL 7488945, at *4 (S.D. Cal. Dec. 21, 2020) (finding an "'outbreak' of a communicable disease" sufficient to withstand a motion to dismiss where at least one parent tested positive for COVID-19 after she "repeatedly visited" plaintiff's school premises days prior).

[12] Plaintiff's brief in support of its partial motion for judgment on the pleadings contained no arguments with respect to Count VI for alleged violation of the NJCFA. (*See generally* D.E. 30-1.) Thus, this Court addresses the sufficiency of the NJCFA claim in connection with Defendant's motion for judgment on the pleadings. In addition, it bears noting that the Complaint contains no Count V.

The NJCFA makes unlawful "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate." N.J.S.A. § 56:8-2.  To state a claim under the NJCFA, plaintiff must allege "(1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendant[']s[] unlawful conduct and the plaintiff's ascertainable loss."  *Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275, 280 (D.N.J. 2011) (quotation omitted).  Although the unlawful conduct of an insurer in the sale of insurance policies to consumers may be redressable under the NJCFA, it "was not intended as a vehicle to recover damages for an insurance company's refusal to pay benefits."  *Myska v. N.J. Mfrs. Ins. Co.*, 114 A.3d 761, 777 (N.J. Super. Ct. App. Div. 2015); *In re Van Holt*, 163 F.3d 161, 168 (3d Cir. 1998) ("The mere denial of insurance benefits to which the plaintiffs believe[ ] they [are] entitled does not comprise an unconscionable commercial practice.").

Here, Plaintiff does not assert an NJCFA claim wholly independent from its breach of contract claims.  Rather, Plaintiff's NJCFA claim is "related directly to the insurance policy dispute over the denial of benefits" due to COVID-19.  *See Ryan v. Liberty Mut. Fire Ins. Co.*, 234 F. Supp. 3d 612, 619 (D.N.J. 2017); *see also Nationwide Mut. Ins. Co. v. Caris*, 170 F. Supp. 3d 740, 746–47 (D.N.J. 2016); *Zero Barnegat Bay, LLC v. Lexington Ins. Co.*, No. 14-1716, 2019 WL 1242436, at *5 (D.N.J. Mar. 18, 2019).  Nor does Plaintiff allege "fraud in connection with the subsequent performance of a consumer contract."  *See Smith v. State Farm Fire & Cas. Co.*, No. 19-10319, 2020 WL 6938432, at *8 (D.N.J. Nov. 25, 2020) (distinguishing *Alpizar-Fallas v. Favero*, 908 F.3d 910, 914 (3d Cir. 2018), which involved a plaintiff who "was tricked into signing

9

a waiver"). Even when viewed in a light most favorable to Plaintiff, Defendant's "talking points" concerning its purported "systemic" handling of COVID-19-related claims in which it "intended to defraud [Defendant's] policyholders" (*see* D.E. 1 ¶ 191; *id.* ¶¶ 147, 199), is contradicted by documents Plaintiff attached to its pleading. (*See* D.E. 1-11, Ex. K at 2 (stating that Defendant's talking points do "not deal with all the issues associated with [COVID-19], but will be helpful in providing responses to *basic questions* as it relates to the coverage provided by [Defendant's] policies") (emphasis added).) For example, Defendant's direct correspondence with Plaintiff and its "talking points" do not foreclose possible coverage under the Communicable Disease Provisions provided that policyholders confirm the "actual presence" of a communicable disease, subject to further investigation. (*See* D.E. 1-6, Ex. F at 2–3; D.E. 1-11, Ex. K at 2–3 (noting that the "actual presence" of a communicable disease may be confirmed by an employee who "actually has [COVID-19]").)[13] For the same reasons, Plaintiff's allegations do not establish that Defendant engaged in unlawful conduct. Accordingly, Defendant's cross-motion for judgment on the pleadings with respect to Count VI is **GRANTED**.

**IV.  CONCLUSION**

For the reasons set forth above, Plaintiff's Partial Motion for Judgment on the Pleadings is **DENIED** and Defendant's Cross-Motion for Judgment on the Pleadings is **GRANTED**. An appropriate order follows.

/s/ Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:        Clerk
cc:          Leda D. Wettre, U.S.M.J.
             Parties

---

[13] Relatedly, because the Complaint focuses on Defendant's denial of coverage under one Policy and does not refer to any experiences of Defendant's other policyholders, Plaintiff fails to plead with the required specificity how Defendant's alleged claim handling practice was "systemic" in nature. (*See generally* D.E. 1); *see also Hanson v. Allstate New Jersey Ins. Co.*, No. 15-8882, 2016 WL 3912025, at *2 n.2 (D.N.J. July 19, 2016) (citing Fed. R. Civ. P. 9(b) and *Frederico v. Home Depot*, 507 F.3d 188, 200–01 (3d Cir. 2007)).